IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TERRI K. HANNA                                                    PLAINTIFF

        v.                          Civil No. 10-2006

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                              DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Terri Hanna, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (Commissioner)

denying her claim for a period of disability and disability insurance benefits ("DIB") under Title

II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

In this judicial review, the court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

The plaintiff filed her application for DIB on February 7, 2007, alleging an onset date of

January 1, 2005, due to back problems, diabetes, fibromyalgia, depression, carpal tunnel

syndrome, and a hernia.  Tr. 114-117, 133, 141-142, 164.  Plaintiff's application was denied

initially and on reconsideration.  Tr.59-60.  Plaintiff then requested an administrative hearing,

which was held on January 23, 2009.  Tr. 23-58.  Plaintiff was present and represented by

counsel.

At the time of the administrative hearing, plaintiff was 35 years of age and possessed the

equivalent of a high school education.  Tr. 27, 32, 139.  She had past relevant work ("PRW")

experience as a general office clerk.  Tr. 33-35, 133-134.

On March 10, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's back disorder, diabetes mellitus, fibromyalgia, carpal tunnel syndrome ("CTS"), and gastroesophageal reflux disorder ("GERD") did not meet or equal any Appendix 1 listing.  Tr. 66.  He found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  Tr. 66.  The ALJ then concluded that plaintiff could perform her PRW as a general office clerk.  Tr. 70.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 17, 2009.  Tr. 1-3.  Subsequently, plaintiff filed this action.  ECF No. 1.  This case is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 11, 12.

## II.    **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If we find it possible "to draw two inconsistent positions from the evidence,

2

and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.    The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

3

III.  **Evidence Presented:**

At the onset, we note that the certified record contains medical records dated prior to Plaintiff's alleged onset date and after Plaintiff's date last insured had expired. Tr. 298-299, 321, 521-525. The burden is on the claimant to show the existence of a disability on or before the date that the insurance coverage expires. *Bastian v. Schweiker,* 712 F.2d 1278, 1279-80 (8th Cir.1983); *Milton v. Schweiker,* 669 F.2d 554, 555 (8th Cir.1982). Therefore, evidence dated outside the relevant time period is not generally relevant to relevant a DIB claim. This evidence will only be considered to the extent it relates back to Plaintiff's condition during the relevant time period.

The medical evidence during the relevant period from January 1, 2005, through June 30, 2006, shows that Plaintiff sought treatment with physicians at the River Valley Musculoskeletal Center for low back pain radiating into her right lower extremity, for which she was initially treated conservatively. Tr. 230, 249, 256-297, 322-327, 332, 516-520. In January 2005, she underwent bilateral reduction mammoplasty to lessen her back pain. Tr. 171-172, 176.

X-rays conducted in March 2005 revealed mild facet arthrosis at the L4-5 and L5-S1 levels without associated disk space narrowing or disk space change. Tr. 320. A magnetic resonance imaging ("MRI") scan of her lumbar spine on April 4, 2005, revealed mild disc bulging at the L5-S1 with focal small midline disc protrusion versus an asymmetric bulge at the L5-S1 that effaced the epidural fat and mild degenerative facet arthropathy at all levels with no lateral recess stenosis. Tr. 529-530. Initially, doctors did not believe these results were significant enough to warrant surgery, but ordered a discogram to discern the cause of her pain. Tr. 277, 299.

4

On May 4, 2005, after reviewing the results of her MRI, Dr. Jones voiced his belief that Plaintiff's primary difficulty was her weight.  Tr. 518.  He believed her condition would be most affected by physiotherapy and weight loss.  Tr. 518.

On August 4, 2005, an esophagogastroduodenoscopy ("EGD") revealed little intolerance to air insufflation.  Tr. 263.  The esophageal and junctional mucosa appeared fairly free of reflux of gastric contents, but did reveal the possible presence of GERD.  Tr. 263-264, 760-777.

On August 10, 2005, Dr. Jones performed a epidural steroid injection and prescribed an IT band stretching and strengthening program.  Tr. 517.  He hoped that conservative measures would be effective in helping to diminish her overall difficulty.  Tr. 517.

In October 2005, Dr. Jones noted that Plaintiff was taking a lot of Lorcet and that this merely hid the pain.  Tr. 516.  He explained to her that he would give her pain medication during the time of work-up, but that her condition was a medical phenomenon that needed to be addressed definitively.  Although the MRI did not show a frank disk herniation, he was highly suspicious and remained convinced that her pain was emanating from her back.  Dr. Jones was of the opinion that a discogram might be the only way to fully delineate the relationship the disk lesion noted on the MRI had to her right lower leg neurogenic symptoms as well as the "giving way" symptoms she was experiencing.  Tr. 516.

On November 3, 2005, a lumbar discogram revealed a broad-based disc herniation at the level of L5-S1 with more focal left paracentral disc herniation; effacement upon the anterior left lateral aspect of the thecal sac with mild spinal canal stenosis; and, a herniated disc abutting the bilateral exiting nerve roots.  Tr. 259-261, 275-276, 332, 514, 737-758.  A CT scan conducted at the same time showed broad-based disk herniation at the L5-S1 level with more focal left

paracentral disk herniation, and effacement upon the anterior left lateral aspect of the thecal sac with mild spinal canal stenosis.  Tr. 515.  Plaintiff reported that her pain was progressively getting worse and that she was frequently using her TENS unit.  Tr. 316-317.  On November 18, 2005, Dr. Jones referred her to Dr. Arthur Johnson, a neurosurgeon.  Tr. 511-512, 800-801.  In December, Dr. Johnson determined that Plaintiff should undergo surgery.  Tr. 312, 329, 510, 802.

On February 6, 2006, Plaintiff underwent spinal fusion surgery with bone marrow aspirate.  Tr. 230, 248-258, 267-269, 322-327, 508-509, 675-726, 778-799, 804-808, 899-921.  Following the surgery and continuing through her date last insured, she continued to complain of low back pain and right leg pain and numbness, for which physicians prescribed physical therapy and pain medication.  Tr. 210-233, 265-266, 318, 330, 339, 360-362,366-367, 372-373, 366-367, 372-373, 379-380, 384-385, 388-390.  These records show that although her pain was not entirely eliminated, Plaintiff's pain was lessened by the use of narcotic pain medication.  Tr. 265, 355, 360, 366-367, 372-373.

Plaintiff sought treatment at the emergency room for back and leg pain several times in February and March 2006, and was prescribed pain medication. Tr. 210-217, 224-228, 230-233, 728-736, 876-898.  Testing in February 2006 showed no evidence of deep vein thrombosis in the right leg.  Tr. 215, 223.  On March 13, 2006, Plaintiff exhibited tenderness to her low back, but her extremities were non-tender with a full range of motion, and she had no apparent motor or sensory deficits.  Tr. 230-233.

When Plaintiff returned to see Dr. Arthur Johnson on March 21, 2006, he noted that Plaintiff was "actually doing reasonably well," although she continued to report pain in her back

6

and right lower extremity.  Tr. 265-266, 311, 328, 506.  Dr. Johnson noted that the x-rays of her

fusion looked "good."  Tr. 265-266, 318, 330, 506-507.  He prescribed Avinza and Lorcet for

break through pain, and advised her to return to the clinic in one month.  Tr. 265, 311.  It does

not, however, appear that Plaintiff returned for further treatment.

Plaintiff began seeking treatment with Dr. Terry Brackman on March 27, 2006, for

continued complaints of low back pain radiating into the right leg.  Tr. 339, 384, 388-390, 492-

494.  His hand written record dated March 27, 2006, is illegible.

During an examination on April 11, 2006, Dr. Brackman noted that Plaintiff had a

positive straight leg raise test, worse on the right side than the left.  Tr. 384-386, 488-490.  She

had scoliosis with convexity to the left, but exhibited a full range of motion to her upper and

lower extremities.  Plaintiff had pain over the L4-L5 and L5-S1 facets and L5 radiculopathy, but

she was able to heel and toe walk.  Tr. 385.  She now rated her pain as an 8 on a 10-point scale.

Dr. Brackman noted that she had 16 of 18 trigger points of fibromyalgia.  Tr. 385.  She also

indicated that her pain increased when she was on her feet.  Tr. 384.  Dr. Brackman made

adjustments to her pain medication.  Roxicodone was prescribed in lieu of Percocet, Plaintiff was

advised to take the Neurontin as prescribed, and Dolgic-LQ was prescribed to treat her

headaches.  Tr. 385.

On April 13, 2006, Plaintiff phoned Dr. Brackman's office to let them know that the

samples of Dolgic he had given her were working well.  Tr. 383, 487.  She requested a

prescription for this medication, and a prescription was called in that day.  Tr. 383.

Plaintiff returned to Dr. Brackman on April 24, 2006.  Tr. 378-381, 483-485.  His

examination findings were unchanged.  Tr. 379.  However, her blood pressure was elevated and

7

she was experiencing increased headaches.  The Neurontin was also causing nausea, but the Lidoderm patches were "somewhat" helpful as was the Valium.  Prevacid was alleviating her GERD pain and the Ambien had increased her sleep.  Dr. Brackman switched Plaintiff from Neurontin to Lyrica and adjusted her pain medications.  Tr. 378-381.

On May 9, 2006, and June 1, 2006, Plaintiff continued to have low back pain radiating to her lower extremity, but medication was now alleviating her pain from a 10 to a 7.  Tr. 366-368, 371-374, 472-474, 477-480.  Her anxiety/depression and insomnia were also noted to have improved with medication.  Dr. Brackman's examination remained unchanged.  Plaintiff continued to exhibit 16 out of the 18 possible fibromyalgia trigger points.  Dr. Brackman prescribed Lidoderm patches and Gabitril.  However, although the Lidoderm patches were effective, Plaintiff stated that she could not afford them.  Tr. 366-368, 372- 373.

On June 30, 2006, which is Plaintiff's date last insured, Plaintiff presented with a new complaint of cervical pain.  Tr. 360-363, 466-469.  Dr. Brackman noted that medication was effective in alleviating her pain from a 10 down to a 6.  Tr. 360.  On examination, Dr. Brackman noted that Plaintiff had full range of motion without restriction to her upper extremities.  Tr. 361.  She exhibited a positive straight leg raise test on the right with 45 degrees flexion, 45 degrees of side bending, and 10 degrees of extension with increased pain primarily over the L4-5 and L5-S1 regions.  Tr. 361.  Dr. Brackman advised her to continue her current medications including Roxicodone, OxyContin, Lyrica, Aleve, Prozac, Prevacid, Valium, Ambien, and Dolgic.  He also ordered a cervical MRI.  Tr. 361-362.

Plaintiff continued to seek treatment from Dr. Brackman from July 2006 through October 2006, after the expiration of date last insured.  Tr. 333-359, 439-465, 470.  On July 27, 2006, Dr.

Brackman again noted that Plaintiff's medication effectively reduced her pain from a 10 to a 6 level. Tr. 355-359, 461-465. Significantly, Dr. Brackman reported that Plaintiff's quality of life had improved a great deal since she began medication therapy. She was now getting out of the house, going to the lake with her family, and attending family activities on a regular basis. Plaintiff was also able to do more with her daughter. Tr. 355-359.

Medical records dated after the relevant time period also indicate that Plaintiff continued to experience pain, participate in physical therapy, and undergo pill counts at the Wellness Clinic of Roland. Tr. 301-309, 405-438.

In August 2006, Dr. Brackman's records indicate that Plaintiff asked for an early medication refill. Tr. 350. She told Dr. Brackman she had last refilled her medication on July 24, 2006, when she had really refilled on July 27, 2006. Plaintiff advised the nurse that the doctor had told her she could get her medication that day. However, the nurse explained that Plaintiff could schedule an appointment for August 21, 2006, but would not be able to get her medication any sooner. Tr. 350.

On August 21, 2006, Plaintiff returned to Dr. Brackman's office. Tr. 351-354, 457-460. He noted a great deal of cervical spasm and median nerve root numbness in both hands consistent with that of carpal tunnel syndrome. Her left hand had been much improved by cock-up wrist splints. However, neither the MRI nor the nerve conduction studies he had ordered had been performed. Plaintiff's dosage of Prozac was increased to treat her anxiety/depression and she was given a steroid injection for her wrist pain. Tr. 351-354.

A pelvic ultrasound dated September 15, 2006, also revealed small follicle ovarian cysts, as well as a slightly larger cyst in the left ovary. Tr. 334, 441. A gallbladder ultrasound showed

a fatty liver, but no gallstones.  Tr. 336, 443.  In September 2006, Dr. Brackman indicated that

her current pain medications had decreased her pain from a 10 to a 6 on a 10-point scale.  Tr.

345-346.  At this time, she had 16 out of the 18 possible trigger points for fibromyalgia.  Plaintiff

was prescribed Oxycodone, Lyrica, Valium, Aleve, Prevacid, Ambien, and Dolgic.  Tr. 345-346.

On September 18, 2006, Plaintiff was experiencing a great deal of back pain, but reported

that her pain level remained a 6.  Tr. 451-453.  Following a steroid injection, Plaintiff had done

very well with relief of the numbness and tingling in the fingers.  Her anxiety and depression had

also responded well to Prozac and her hypertension was borderline controlled.  An examination

revealed a full range of motion without restriction in her upper and lower extremities with a

positive straight leg raise sign on the right side.  Her reflexes revealed radiculopathy along the

L5 nerve root into the right lower extremity.  She had 16 out of 18 possible fibromyalgia trigger

points, 45 degrees of flexion, 45 degrees of side bending, and 10 degrees of extension.  Tr. 451-

453.

Plaintiff continued to see Dr. Brackman until October 12, 2006, when Dr. Brackman

released Plaintiff from his care for failing a medication count, noncompliance, and frequently

requesting early medication refills or medication changes.  Tr. 333, 339, 340, 439, 456.  Dr.

Brackman recommended that Plaintiff be seen at a medication rehabilitation facility because he

believed she potentially had a severe addiction problem to prescription pain medication.  He

offered his assistance in helping her find such a facility.  Tr. 339.

When Plaintiff sought treatment at the hospital for abdominal pain, nausea, and vomiting

on November 25, 2006, Dr. Deborah Hayes found that Plaintiff's behavior and statements during

10

her visit with Plaintiff were inconsistent.[1]  Tr. 69, 188-209, 552-590, 809-838, 868-875, 922-942.

After being told she could not eat or drink, due to vomiting, Plaintiff asked for food and drink.

She also repeatedly asked for juice, but then stated she could not hold anything down.  Plaintiff

complained of pain and was given a low dose of Morphine.  Although she continued to complain

of vomiting, no further emesis was noted by the hospital staff.  On examination, she exhibited

back pain, but a full range of motion in her extremities.  Plaintiff was diagnosed with

uncontrolled new onset diabetes with vomiting and ketosis, acute duodenitis, hiatal hernia with

GERD, hyperlipidemia, hypertension, hypokalemia, polycystic ovarian syndrome with

hypomenorrhea, and degenerative disease of the spine with chronic pain and she was discharged

home on November 30, 2006.  Tr. 820.

On February 17, 2007, Plaintiff sought treatment at the emergency room for nausea and

vomiting, dizziness, blurred vision, and total body pain.  Tr. 183-184, 234-240, 634-669, 839-

866.  Her diabetes was not well controlled as this time.  Dr. David Trent noted there was a

suggestion of hysteria compounded by narcotic addiction.  Tr. 183-189, 862.  She returned with

similar complaints on February 23, 2007.  624-633

In April 2007, Plaintiff was treated in the ER after falling.  Tr. 497-504, 616-623.

Although she complained of lower back pain, x-rays revealed no abnormalities, aside from post-

surgical changes of the lower lumbar spine.  Tr. 497-504

A progress record from the Urgent Pain Care Clinic of Roland dated June 14, 2007,

revealed that Plaintiff's pain had "significantly improved on the current analgesic regimen."  Tr.

526-528. Her mood was also significantly improved and stable.  Dr. Robert Kale noted that

---

[1]It is noted that Dr. McDonald treated Plaintiff when she presented in the emergency room.

11

Plaintiff was tolerating the medications well, without significant side effects. Plaintiff was better able to perform activities of daily living and other required activities. Further, the doctor noted that Plaintiff was doing much better and her pain was under much better control. Her function had improved and she was better able to care for her family and interact with them socially. Plaintiff felt this was a significant improvement for her family and the quality of her life. Tr. 526-528.

On July 14, 2007, Plaintiff was very pleased with her progress. Tr. 537-539. Function, activity level, and productivity had all improved. She felt her quality of life was significantly better. Dr. Kale noted Plaintiff was much more capable of handling the physical and mental demands of personal life, personal care, and interpersonal relationships. Tr. 537-539. In August 2007, Plaintiff was treated in the ER for back pain, but on follow-up with Dr. Kale, he noted that Plaintiff continued to do well on her current medications. Tr. 540-541, 614. No medication adjustments were necessary. Tr. 540-541. Further, by September, he noted that she was "significantly improved." Tr. 542-543. This continued into October 2007. Tr. 544-547.

In March 2008, Plaintiff was admitted to the hospital due to progressive weakness over the previous three weeks and fainting episodes. Tr. 947-1232. She reported passing out three times in the waiting room, just waiting to be examined. Plaintiff was also experiencing headaches and some swelling of her face with sinus congestion. A CT scan was normal, except for sinusitis. Tr. 1302. An MRA of her brain also showed a normal circle of Willis. Tr. 1299. Dr. Vikki Sutterfield noted that Plaintiff was on quite a list of narcotics for lower back pain. Plaintiff was admitted and started on antibiotics. Her blood sugars were not well controlled, and an endocrinology consult resulted in a prescription for Metformin. Plaintiff continued to

12

experience some migraines, and these did improve over time.  Due to continued lower back pain, x-rays and an MRI were performed which revealed no new changes.  Tr. 1294-1298.  Dr. Sutterfield consulted her treating doctor who assured her that Plaintiff was not over medicated. Plaintiff was discharged seven days later.  Tr. 947-1232.

In September 2008, Dr. Sutterfield treated Plaintiff for diabetes, blood in her stool, syncope, and chronic pain.  Tr. 1291-1293.  Records indicate that the Metformin was causing nausea and vomiting, so she was switched to Actos.  A colonoscopy was also ordered.  Tr. 1291-1293.

In July 2009, Plaintiff was admitted for four days due to nausea and vomiting.  Tr. 1235-1259.  Records indicate she had been hospitalized the previous month with similar symptoms. Tr. 1260-1289.  A full work-up was unremarkable.  Plaintiff continued to experience on and off episodes of nausea and vomiting which gradually worsened.  Her condition responded to treatment via IV hydration, Lantus, sliding-scale insulin, ulcer and deep venous thrombosis prophylaxis, and Dilaudid.  Plaintiff's diet was gradually advanced and she was released home with diagnoses of diabetes type II, uncontrolled hypertension, dyslipidemia, chronic back pain, chronic narcotic abuse, and abdominal pain. Tr. 1235-1259.111

## IV.   **Discussion:**

Plaintiff contends that the ALJ erred in his credibility rating and did not properly assess her RFC.  As it is our duty to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole, we will begin by examining the ALJ's credibility determination.  *Cox*, 495 F.3d at 617.

13

When evaluating the credibility of plaintiff's subjective complaints, the ALJ is required to make an express credibility determination detailing his reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents her from performing any kind of work).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

14

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible.  The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

We note that Plaintiff was diagnosed with chronic lower back pain.  She underwent surgery for this condition in February 2006, but the surgery was not successful, leaving Plaintiff with chronic pain.  For this, she was prescribed a variety of narcotic pain medications.  However, post surgical x-rays and MRI's were essentially unremarkable.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).

In April 2006, Plaintiff rated her pain as an 8 on a 10-point scale, but this had decreased to a six by  June 2006.  Plaintiff had full range of motion without restriction to her upper extremities.  Tr. 361.  She exhibited a positive straight leg raise test on the right with 45 degrees flexion, 45 degrees of side bending, and 10 degrees of extension with increased pain primarily over the L4-5 and L5-S1 regions.  Tr. 361.  On July 27, 2006, Dr. Brackman again noted that Plaintiff's medication effectively reduced her pain from a 10 to a 6 level.  Tr. 355-359, 461-465.  Significantly, Dr. Brackman reported that Plaintiff's quality of life had improved a great deal since she began medication therapy.  She was now getting out of the house, going to the lake with her family, and attending family activities on a regular basis.  Plaintiff was also able to do more with her daughter.  Tr. 355-359.  *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (holding "if an impairment can be controlled by treatment or medication, it cannot be considered

15

disabling.").  Although well outside the relevant time period, records from Dr. Kale also show decreased pain and increased function over the next year.

We also note medical records indicate that Plaintiff was abusing her narcotic pain medications.  Dr. Brackman released her from care in October 2006, when she failed a medication check.  *See Ellis v. Barnhart*, 392 F.2d 988, 996 (8th Cir. 2005) (finding that the ALJ properly discounted the claimant's credibility on the ground that medication alleviated his pain, and because the record indicated that the claimant overused narcotic medication).  Records indicate that her pill count was grossly off.  Tr. 333, 39, 340, 439, 456.  Emergency room records from November 2006 and records dated as late as February 2007 also indicate that Plaintiff was likely abusing her pain medications.  Tr. 188-209, 1235-1259.  Therefore, although limiting, we do not find Plaintiff's back impairment to be totally disabling.

Dr. Brackman first diagnosed Plaintiff with fibromyalgia in April 2006, noting that she had 16 out of the 18 possible tender points associated with this impairment.  Tr. 384-385.  Her diagnosis continued throughout his period of treatment.  However, as previously noted, Plaintiff reported significant pain relief and increased activity with medication therapy.  As such, we can not say that her fibromyalgia was a debilitating as alleged.

In June 2006, Plaintiff was diagnosed with carpal tunnel syndrome.  Tr. 360-362.  We note, however, that in August 2006, Dr. Brackman indicated that her left hand was much improved after the use of cock-up wrist splints.  Further improvement was noted following a steroid injection.  Tr. 345-346.  *See Brown*, 390 F.3d at 540 (holding "if an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

16

Records do indicate that Plaintiff was diagnosed with hypertension as well.  And, during the relevant time period, her condition waivered between uncontrolled and stable.  It does not, however, appear that Plaintiff's hypertension ever necessitated hospitalization or emergency care. There is also no indication that it was so severe that it interfered with her ability to perform activities of daily living or work-related activities.  Accordingly, we do not find this impairment to be as severe as alleged.

While there is evidence that Plaintiff was diagnosed with diabetes, the first diagnosis of this impairment was not made until November 26, 2006, approximately five months after Plaintiff's date last insured had expired.  We do note that Plaintiff had some issues getting her glucose levels under control; however, because this impairment was not diagnosed until after the relevant time period, we can not say it supports Plaintiff's current application for disability. Plaintiff should be advised that additional applications for disability may be filed for impairments that arose after the date of the ALJ's decision in this matter.

Plaintiff's own reports of daily activities also undermine her claim of disability.  On an adult function report dated June 20, 2007, Plaintiff reported the ability to care for her five-year-old daughter, care for her personal hygiene as long as someone else is in the home in the event she needs assistance, prepare sandwiches and frozen or crock pot dinners two to three times weekly, do the laundry, go outside two times per week, drive a car, ride in a car, go out alone, shop for groceries and medications in stores and by phone, count change, use a checkbook/money orders, watch television, read, talk on the phone, and attend family dinners. Tr. 143-150.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th

17

Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

Plaintiff's husband, Stacy Hanna, testified on her behalf.  Tr. 51-53.  He testified that he performed all of the household chores because Plaintiff was basically bedridden.  Mr. Hanna did, however, state that Plaintiff took their daughter to and from school.  This testimony was properly considered by the ALJ, but found to be unpersuasive.  This determination was well within the ALJ's province.  *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that plaintiff suffers from some degree of impairment, she has not established that she is unable to engage in any and all gainful activity.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).  Neither the medical evidence nor the reports concerning her daily activities supports plaintiff's contention of total disability.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

18

We next turn to the ALJ's determination that plaintiff retained the RFC to perform a limited range of sedentary work.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective complaints, the plaintiff's testimony regarding her daily activities, and the functional limitations set forth by the physicians.  On August 28, 2007, Dr. David L. Hicks completed a physical RFC assessment.  Tr. 394-401.  After reviewing Plaintiff's medical records, he determined that Plaintiff retained the ability to perform work at the light exertional level involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  The ALJ noted that Dr. Hick's finding was based on the inconsistencies between her alleged symptoms and the objective  evidence, and her history of abusing pain medication.  Tr. 68, 401.  Dr. Hick's assessment that Plaintiff could perform light work supports the ALJ's finding that Plaintiff could perform at least sedentary level work.

19

We also note Dr. Brackman's findings that Plaintiff's pain had significantly improved with medication, as well as Plaintiff's own admission that her life and the life of her family had significantly improved with pain management.  Plaintiff suggests that the ALJ improperly considered Dr. Brackman's findings.  However, as previously noted, Dr. Brackman's records support the ALJ's findings that her pain responded well to medication.  His records also indicate that Plaintiff exhibited drug seeking behavior, a behavior that discredits her allegations of disabling pain.  Tr. 68-69.  *See Ellis*, 392 F.2d at 996 (finding that the ALJ properly discounted the claimant's credibility on the ground that medication alleviated his pain, and because the record indicated that the claimant overused narcotic medication).

Plaintiff also contends that the ALJ improperly assigned significant weight to Dr. McDonald's opinion when Dr. McDonald treated Plaintiff on only one occasion in the emergency room.  We note, however, that Dr. McDonald and Dr. Hayes both treated Plaintiff during that hospitalization and both concluded that Plaintiff's behavior and comments were inconsistent with her complaints.  It is the opinion of the undersigned that the records from this hospitalization support Dr. Brackman's conclusion that Plaintiff was abusing narcotic pain medication and may have been seeking treatment simply to receive additional pain medication. After reading the ALJ's opinion, it seems clear that he found the same to be true.

Accordingly, given the fact that Plaintiff adjusted to her narcotic pain management regimen well and reported no side effects, we find substantial evidence to support the ALJ's conclusion that she could perform sedentary work involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.

20

We also find substantial evidence to support the ALJ's finding that plaintiff could return to her PRW. (Tr. 60-62). The vocational expert ("VE") testified that a person of plaintiff's age, education, and work experience who could perform the range of sedentary work described above, could return to plaintiff's PRW as a general office clerk. Tr. 55. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). The VE testified that this position was sedentary, semiskilled work with a specific vocational preparation of 4. As we can find no evidence to negate Plaintiff's ability to perform this level of work, we recommend affirming the ALJ's decision. *See Evans v. Shalala*, 21 F.3d 832, 833-34 (8th Cir. 1994) (plaintiff will be found not disabled if he can perform the actual functional demands of his past relevant work, *or* as it is generally performed in the national economy).

## V.    Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of December 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

21

(Rev. 8/82)